IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOHNNY GREEN JR.,                      §
                                       §
              Petitioner,              §
                                       §
v.                                     §        Civil Action No. 4:16-CV-876-O
                                       §
LORIE DAVIS, Director,                 §
Texas Department of Criminal Justice,  §
Correctional Institutions Division,    §
                                       §
              Respondent.              §

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed

by Petitioner, Johnny Green Jr., a state prisoner confined in the Correctional Institutions Division

of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ,

Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded

that the petition should be denied.

## I. BACKGROUND

In 2010 Petitioner was indicted in Tarrant County, Texas, Case No. 1199474D, on one count

of capital murder by smothering Carolyn Roberson with his hand or hands in the course of

committing or attempting to commit aggravated sexual assault of Roberson or committing or

attempting to commit robbery of Roberson (Count One) and one count of murder by smothering

Roberson with his hand or hands or by causing Roberson serious bodily injury by smothering

Roberson with his hand or hands resulting in her death (Count Two). Clerk's R. 2, ECF No. 16-1.

On August 26, 2011, a jury found Petitioner guilty of the lesser charge and assessed his punishment

at life imprisonment and a $10,000 fine. *Id.* at 74; Reporter's R., vol. 7, 84, ECF No. Petitioner's

conviction was affirmed on appeal, and the Texas Court of Criminal Appeals refused his petition for discretionary review. Op. 5, ECF No. 16-2. Petitioner also challenged his conviction in a postconviction state habeas-corpus application, which was denied by the Texas Court of Criminal Appeals on the findings of the trial court. Action Taken & SHR06,[1] ECF Nos. 17-20 & 17-22. This federal habeas-corpus petition followed.

The facts of the case were summarized by the state appellate court as follows:

> On July 7, 2002, the body of Carolyn Roberson was found in an open field in Fort Worth. An autopsy revealed that Ms. Roberson was smothered to death. Ms. Roberson also suffered a laceration to the back of her head consistent with being struck with a brick, gliding abrasions on her knees and shoulders, facial lacerations, and defensive wounds on both hands. Several of Ms. Roberson's belongings were recovered at the crime scene and investigators were able to extract DNA samples from multiple items, including her top, bra, pants, the curb, and a brick. The DNA samples were consistent with the DNA of the victim, and of one unidentified suspect. In 2009, investigators were notified that the unknown suspect's profile DNA was connected to the existing DNA profile of [Petitioner] in the State's Combined DNA Index System (CODIS) offender database. After obtaining a DNA sample from [Petitioner], scientists were able to identify that the DNA obtained from blood on Ms. Roberson's top, bra, and pants originated from [Petitioner]. It was also discovered that [Petitioner] lived a few blocks away from the crime scene at the time of Ms. Roberson's death. . . .

Op. 1-2, ECF No. 16-2 (footnote omitted).

## II. ISSUES

In four grounds for relief, Petitioner claims that (1) he received ineffective assistance of trial counsel; (2) he received ineffective assistance of appellate counsel; (3) the trial court abused its discretion in various respects; and (4) the evidence was insufficient to support his conviction. Pet. 6-7, ECF No. 1.[2]

---

[1]"SHR06" refers to the record of Petitioner's state habeas proceeding in WR-62,574-06.

[2]Because there are attachments to the petition, the pagination in the ECF header is used.

## III. RULE 5 STATEMENT

Respondent asserts that one or more of Petitioner's claims are unexhausted and/or procedurally barred from federal habeas review. Resp't's Answer 11-17, ECF No. 17. She does not otherwise believe that the petition is successive or barred by the federal statute of limitations. *Id.* at 5.

## IV. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In this case, the state habeas court entered findings of fact and conclusions of law relevant

to Petitioner's claims and the Texas Court of Criminal Appeals adopted those findings in denying relief. Petitioner has failed to rebut the presumptive correctness of the state courts' factual findings with clear and convincing evidence; thus, this Court applies the presumption of correctness to those findings, including the court's credibility findings, in considering Petitioner's claims. *See Richards v. Quarterman,* 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002).

### B. Ineffective Assistance of Counsel

Under his first and second grounds, Petitioner claims he received ineffective assistance of trial and appellate counsel. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's

ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner was represented at trial and on appeal by J. Warren St. John. Petitioner claims counsel was ineffective at trial by failing "to use the [defense] expert's testimony to controvert the state's alleged set of facts"; failing "to file a motion to suppress evidence that had no elemental or evidentiary value"–*i.e.,* several pieces of brick with the victim's blood on them; and failing "to object when two of the potential jurors were not dismissed by the trial court [for bias]." Pet. 6, 11, ECF No. 1.

Petitioner raised his claims in his state habeas application, and the state habeas court conducted a hearing by affidavit. Counsel, an experienced criminal defense attorney, responded to Petitioner's allegations in his affidavit as follows (legal citations are included as provided in the original):

> On February 1, 2016, [Petitioner] filed an Application for Post-Conviction Writ of Habeas Corpus. The petition alleges that I was ineffective in my representation of him. I submit that I was effective and state the following to show that [Petitioner] was competently and effectively represented.

I.
HISTORY OF THE CASE

The record indicates that on July 7, 2002, the body of Carolyn Roberson was found in a field in Fort Worth, Texas in the Stop Six neighborhood.

Ms. Roberson's partially nude body was discovered by Georgia Miles as she left church that Sunday morning. Ms. Roberson, a known prostitute in Stop Six, had been killed. She was nude from the waist down. It appeared her property had been rifled through. The record shows that Fort Worth Police made the scene.

The police collected Ms. Roberson's property. Found at the scene were her shoes, purse and hair piece.

The police collected blood samples from Ms. Roberson's clutch, as well as from a brick found at the scene.

The record shows that [Petitioner] was developed as a suspect from a DNA database. As a result of DNA, [Petitioner] was arrested for Capital Murder of Ms. Roberson.

## II.
## RESPONSE TO [PETITIONER]'S GROUNDS FOR RELIEF

In *Craig v. State,* 825 S.W.2d 128 (1992), the Court stated that in Texas, we follow two standards in order to gauge the effectiveness of counsel:

(1) (a)  In the guilt-innocence phase of trial in capital and non-capital cases, the *Strickland v. Washington* (466 U.S. 668) test is the proper standard to gauge the effectiveness of counsel.

In the punishment phase of trial in capital murder cases, the *Strickland v. Washington* is the proper standard to gauge effectiveness of counsel.

(2)  In the punishment phase of non-capital cases in Texas, the *Ex Parte Duffy,* Tex.Cr., 607 S.W.2d 507 (1980) test is the proper test. See also *Valencia v. State,* __ S.W.2d __ (Tex.Cr.App. No. 0049-95, June 4, 1997) WL 297713.

As stated in *Craig v. State,* supra, "Strickland requires a two-part analysis: (1) "did the attorney's performance fail to constitute 'reasonably effective assistance,' i.e., did the defense attorney's representation fall below an objective standard of reasonableness under professional norms, and (2) if so, was there a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

Actually, the *Ex Parte Duffy* test is the same test previously utilized by the Federal Fifth Circuit as announced in *McKenna v. Ellis,* CA-5, 280 F .2d 592 and followed by *King v. Beto,* CA-5, 429 F.2d 221. The Fifth Circuit held that effective counsel does not mean errorless counsel, but counsel reasonably likely to render and rendering reasonably effective assistance. *Ex Parte Duffy* follows this same credo somewhat in its application.

In *Strickland v. Washington,* 466 U.S. 668 . . ., the Supreme Court held that the 6th Amendment right to counsel is the right to "effective assistance of counsel," and this applies to the punishment procedure as well as the actual trial on the issue of guilt. (*Strickland* is not applicable to a penalty phase.) The defendant must, to obtain reversal for ineffective assistance of counsel, show that (1) his counsel's performance was deficient, and (2) this deficiency was such as to deprive the defendant of a fair trial.

III.
RESPONSE TO FAILURE TO PROPERLY AND
EFFECTIVELY REPRESENT THE DEFENDANT

[Petitioner] was indicted for Capital Murder. The case went to trial and he was convicted for a lesser crime of Murder. [Petitioner] was sentenced to life in prison for Murder.

[Petitioner]'s case was appealed to the Court of Criminal Appeals in Fort Worth, Texas and was transferred to the Court of Appeals in El Paso by order of the Supreme Court of Texas.

[Petitioner] was initially facing death by lethal injection for the offense of Capital Murder.

All relevant facts were fully investigated, including the five crime scene views and exhaustive search to look for any potential witnesses who could be helpful in the defense of [Petitioner]. A forensic expert was retained to review the DNA findings at trial. The expert could not contradict the DNA expert of the State and was used for consultation purposes. As a matter of fact, [Petitioner] admitted that he helped carry the deceased body of Ms. Roberson to the field to help someone on the street who had asked for his help. When questioned who that person was, [Petitioner] had no name as to who that mystery person was. Asked why [Petitioner] did not call the Police, [Petitioner] could not or would not answer that question. [Petitioner]'s DNA would clearly be present on the deceased woman's body, who was nude from the waste down. Proper Voir Dire was conducted with the legally correct strikes made to the panel. Any and all objections regarding the panel were properly preserved. There were no bias[ed] jury members. [Petitioner] was acquitted of the

capital murder charge which carries death or life in the penitentiary. The State waived
seeking the death penalty and [Petitioner] was facing life without parole. . . .

When representing a client, my goal is always to achieve the best possible
result with his or her direction, which is exactly what I did with [Petitioner]'s case.
All course of conduct was strategically designed to benefit my client.

SHR06 98-102, ECF No. 17-22.

Based on counsel's affidavit and the documentary record, the state habeas court entered the

following factual findings regarding Petitioner's claims:

*Use of Expert's Testimony to Controvert the State's Case*

14.    [Petitioner] alleges that counsel failed to use his forensic expert to explain to
       the jury that the presence of [Petitioner]'s blood on the victim does not prove
       he killed her.

15.    [Petitioner] asserts his blood was on the victim because he helped move her
       dead body out of the street.

16.    Hon. St. John attempted to investigate [Petitioner]'s claim that he merely
       helped move the body but [Petitioner] would not provide a name of whom he
       helped.

17.    [Petitioner] could not answer why he did not call the police after helping the
       unnamed killer move the victim's dead body.

18.    Hon. St. John retained a forensic expert to review the DNA test results.

19.    The forensic expert could not contradict the DNA expert of the State so Hon.
       St. John used him for consultation purposes.

20.    [Petitioner] presents no evidence to support his claim that an expert could
       have controverted the State's facts at trial.

21.    [Petitioner] presents no evidence that counsel's representation fell below an
       objective standard of reasonableness because counsel did not present expert
       testimony to controvert the State's facts at trial.

22.    There is no evidence that a reasonable likelihood exists that the outcome of
       the proceeding would have been different had counsel called a forensic expert

to testify at trial.

*Motion to Suppress: Pieces of Brick*

23.    [Petitioner] complains that counsel failed to file a motion to suppress the bloody pieces of brick that the State argued were once the whole brick that caused the victim's head injuries.

24.    [Petitioner] argues the pieces of brick were inadmissible because "there was no direct evidence that proved the pieces of brick were part of a whole beyond a reasonable doubt, or that it was the murder weapon or weapon used to assault the victim."

25.    [Petitioner] argues that the pieces of brick contained the victim's blood because she was laying on them.

26.    The bloody pieces of brick were found on the street several yards away from the victim's body, which was found in a field.

27.    [Petitioner]'s argument that the pieces of brick had the victim's blood on them because she was lying on them is without merit.

28.    The victim's head injuries were consistent with being hit by a brick.

29.    It is reasonable that the brick broke when the victim was hit with it.

30.    Because the victim's injuries were consistent with being caused by a brick, and the victim's blood was found on broken pieces of brick, any motion to suppress would have been frivolous.

31.    The decision to not file a motion to suppress the bloody pieces of brick was the result of reasonable trial strategy.

31.    A reasonable likelihood does not exist that a motion to suppress would have been granted had counsel filed one regarding the pieces of brick.

*Motion to Suppress: Reconstruction Testimony and Evidence*

33.    [Petitioner] argues that the pictures and testimony of the reconstruction of the pieces of brick were inadmissible because they were "unreliable."

34.    The pieces of brick found together formed part of a whole brick perfectly.

35. It is reasonable that the brick broke when the victim was hit with it.

36. There is no evidence, or authority, that the testimony and pictures regarding matching the pieces of brick back together to form a brick were "unreliable."

37. Because the victim's injuries were consistent with being caused by a brick, the victim's blood was found on broken pieces of brick, and the broken pieces fit together to form a brick, any motion to suppress would have been frivolous.

38. The decision to not file a motion to suppress the evidence regarding the reconstruction of the brick from the bloody pieces was the result of reasonable trial strategy.

39. A reasonable likelihood does not exist that the motion to suppress would have been granted had counsel filed one regarding the evidence and testimony about the reconstruction of the brick from the bloody pieces.

*Objection: Two Biased Jurors on Jury after Being Struck*

40. The trial court granted [Petitioner]'s only challenge for cause.

41. The trial court granted the agreed challenges for cause of the State and defense.

42. All peremptory strikes were honored by the trial court.

43. Hon. St. John recalls there were no biased jury members on [Petitioner]'s jury.

44. There is no evidence in the record that the trial court allowed two biased jurors onto the jury after [Petitioner] used his peremptory challenges to dismiss them.

45. There is no evidence that Hon. St. John failed to properly object during voir dire.

46. Hon. St. John's affidavit is credible and supported by the record as to his responses regarding his representation during the trial proceedings.

*Effect of Representation on Outcome, of the Trial Proceedings*

. . .

54.    There was overwhelming evidence to prove [Petitioner]'s guilt for murder.

55.    There is no evidence that a reasonable likelihood exists that the outcome of the trial proceedings would have been different but for the alleged misconduct.

*Id.* at 124-28 (citations omitted).

Based on its factual findings, and applying the *Strickland* standard, the state court concluded that Petitioner had failed to prove that counsel's representation was deficient or that but for counsel's acts or omissions there was a reasonable likelihood that the outcome of his trial would have been different. *Id.* at 143-45.

Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed Petitioner's ineffective-assistance claims in conjunction with the state court records, the state courts' application of *Strickland* was not objectively unreasonable under the doubly-deferential standard applied to such claims.[3] Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous requests, motions, or objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (providing counsel is not required to make

---

[3]Petitioner asserts that the state court's determination of facts relevant to his ineffective-assistance claims was unreasonable due to its failure to hold an evidentiary hearing. Pet. 11-12, ECF No. 1. However, a live evidentiary hearing is not required. Rather than conduct a formal hearing, a state court may evaluate an ineffective-assistance-of-counsel claim based on affidavits. *Carter v. Collins,* 918 F.2d 1198, 1202 (5th Cir. 1990). "The AEDPA requires that we presume correct the habeas court's findings of fact unless the petitioner 'rebuts the presumption of correctness by clear and convincing evidence.' This is so even if the hearing was a 'paper' hearing and may not have been full and fair." *Morrow v. Dretke,* 367 F.3d 309, 315 (5th Cir. 2004) (internal citations and quotations omitted).

futile motions or frivolous objections); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002)

(providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses,

including expert witnesses, in support of an ineffective-assistance claim); *Green v. Johnson,* 160

F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a

claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); Murray v.

Maggio, 736 F.2d 279, 283 (5th Cir. 1984) (providing "[t]he filing of pretrial motions falls squarely

within the ambit of trial strategy"). Even if Petitioner could demonstrate ineffective assistance as to

one or more of his claims, the substantial evidence of his guilt precludes a finding of prejudice.

Petitioner claims counsel was ineffective on appeal by inadequately briefing the points of

error raised and failing to raise a point of error regarding the seating of biased jurors. Pet. 6, 12, ECF

No. 1. In his brief on appeal, counsel raised nine points of error, which included a legal-sufficiency-

of-the-evidence point and eight abuse-of-discretion points alleging that the trial court erred by

overruling his objections to inadmissible evidence under Texas Rules of Evidence 401 and 403.

Appellant's Br., ECF No. 16-3. The appellate court overruled all points as not preserved for appeal

and/or as inadequately briefed. Op 2-5, ECF No. 16-2. Counsel responded to Petitioner's allegations

in his affidavit by merely stating that "all legally relevant issues were properly preserved, researched

and addressed to the Court of Appeals." SHR06 at 102, ECF No. 17-22.

Based on counsel's affidavit and the documentary record, the state habeas court entered the

following factual findings regarding Petitioner's claims:

<u>Appellate Point of Error One: Legal Sufficiency</u>

58.    [Petitioner]'s first point of error on direct appeal alleged that the evidence
       was legally insufficient to support his conviction.

59. In 2002, the victim was found in a field across from a church. [4 RR 30-34]

60. There was evidence that the victim had been dragged from the curb of the nearby street.

61. The victim was naked from the waist down and had been dead for several hours when she was found.

62. The victim had been hit in the back of the head and died as the result of slow smothering.

63. The laceration on the back of the victim's head was consistent with being hit with a brick.

64. The victim's blood was found on pieces of brick and on the curb of the nearby street.

65. In 2009, [Petitioner]'s DNA profile was matched to DNA found on the victim's top, her bra, the outside of her pants, and inside the pocket of her pants.

66. At the time of the murder, [Petitioner] lived at a house a short distance away from where the victim's body was found.

67. There is no evidence that the evidence was legally insufficient to support [Petitioner]'s conviction.

68. There is no evidence that [Petitioner]'s first point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

69. There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his first point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Appellate Point of Error Two: Rule 403 Objection to State's Exhibit 27

70. [Petitioner]'s second point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s objection based on the Texas Rules of Evidence ("Rule 403 objection") to State's Exhibit 27, pieces of brick collected at the scene.

71. The medical examiner testified that the victim had a laceration to the back of her head that was consistent with being hit with a brick.

72.     The pieces of the brick ("State's Exhibit 27") were believed to make up the brick that caused the laceration to the back of the victim's head.

73.     State's Exhibit 27 was probative and helpful to the jury because it was the physical evidence to which the witnesses referred and was the subject of discussed DNA testing.

74.     State's Exhibit 27 was not particularly gruesome or unfairly prejudicial, related directly to the offense, did not confuse the issues, was relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and was not needlessly cumulative because it was the physical evidence to which the witnesses referred and was the subject of discussed DNA testing.

75.     There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 27.

76.     There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 27 affected [Petitioner]'s substantial rights.

77.     There is no evidence that [Petitioner]'s second point of [error] would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

78.     There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his second point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Appellate Point of Error Three: Rule 403 Objection to State's Exhibit 31

79.     [Petitioner]'s third point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s Rule 403 objection to State's Exhibit 31, blood swab samples from the street.

80.     The blood from the street ("State's Exhibit 31") was connected to the victim through DNA testing and was evidence relevant to the charged offense.

81.     State's Exhibit 31 was probative and helpful to the jury because it tied that area of the street to the offense and established the series of events that led to the victim's death.

82.     State's Exhibit 31 was not particularly gruesome or unfairly prejudicial,

related directly to the offense, did not confuse the issues, was relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and was not needlessly cumulative because it tied the street to the offense and established the series of events that led to the victim's death.

83. There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 31.

84. There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 31 affected [Petitioner]'s substantial rights.

85. There is no evidence that [Petitioner]'s third point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

86. There is no evidence that Petitioner was prejudiced by appellate counsel's briefing of his third point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Appellate Point of Error Four: Rule 403 Objection to State's Exhibit 39

87. [Petitioner]'s fourth point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s Rule 403 objection to State's Exhibit 39, [Petitioner]'s buccal swab.

88. [Petitioner]'s buccal swab ("State's Exhibit 39") was used to compare [Petitioner]'s DNA to the DNA found at the scene, which linked him to the offense.

89. State's Exhibit 39 was probative and helpful to the jury to explain the chain of custody and the steps taken to compare [Petitioner]'s DNA to the foreign DNA found on the victim's clothing, which ultimately linked him to the offense.

90. State's Exhibit 39 was not particularly gruesome or unfairly prejudicial, related directly to the offense, did not confuse the issues, was relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and was not needlessly cumulative because it was [Petitioner]'s buccal swab that allowed authorities to link him to the crime.

91. There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 39.

92. There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 39 affected [Petitioner]'s substantial rights.

93. There is no evidence that [Petitioner]'s fourth point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

94. There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his fourth point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Appellate Point of Error Five: Rule 403 Objection to State's Exhibit 32

95. [Petitioner]'s fifth point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s Rule 403 objection to State's Exhibit 32, blue pants collected near the victim's body.

96. [Petitioner]'s DNA was found on the victim's blue pants that were collected near the victim's body ("State's Exhibit 32").

97. State's Exhibit 32 was probative and helpful to the jury as it belonged to the victim and connected [Petitioner] to the offense.

98. State's Exhibit 32 was not particularly gruesome or unfairly prejudicial, related directly to the offense, did not confuse the issues, was relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and was not needlessly cumulative because it was the victim's pants found near her body at the scene.

99. There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 32.

100. There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 32 affected [Petitioner]'s substantial rights.

101. There is no evidence that [Petitioner]'s fifth point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

102. There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his fifth point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

## Appellate Point of Error Six: Rule 403 Objections to State's Exhibits 40 through 57

103. [Petitioner]'s sixth point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s Rule 403 objections to State's Exhibits 40 through 57.

104. State's Exhibits 40 through 57 included blood swabs and hair samples taken from the bricks, the victim's clothing and fingernails, and the crime scene.

105. The swabs from several items from the victim and crime scene ("State's Exhibits 40 through 57") contained both the [Petitioner]'s and the victim's DNA.

106. State's Exhibits 40 through 57 were probative and helpful to the jury to connect [Petitioner] to the scene and explain the process of DNA testing.

107. State's Exhibits 40 through 57 were not particularly gruesome or unfairly prejudicial, related directly to the offense, did not confuse the issues, were relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and were not needlessly cumulative because they were swabs from the victim and the crime scene and they connected [Petitioner] to the crime.

108. There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objections to State's Exhibits 40 through 57.

109. There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objections to State's Exhibits 40 through 57 affected [Petitioner]'s substantial rights.

110. There is no evidence that [Petitioner]'s sixth point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

111. There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his sixth point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

## Appellate Point of Error Eight: Rule 403 Objection to State's Exhibits 33 and 44

112. [Petitioner]'s eighth point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s Rule 403 objections to State's Exhibits 33 and 34, the victim's tank top and shirt.

113.    [Petitioner]'s DNA was found on the victim's top ("State's Exhibits 33 and 34").

114.    State's Exhibits 33 and 34 were probative and helpful to the jury as they belonged to the victim and connected [Petitioner] to the offense.

115.    State's Exhibits 33 and 34 were not particularly gruesome or unfairly prejudicial, related directly to the offense, did not confuse the issues, were relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and were not needlessly cumulative because they were the victim's clothing found at the scene and connected [Petitioner] to the crime.

116.    There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objections to State's Exhibits 33 and 34.

117.    There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objections to State's Exhibit 33 and 34 affected [Petitioner]'s substantial rights.

118.    There is no evidence that [Petitioner]'s eighth point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

119.    There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his eighth point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Appellate Point of Error Nine: Rule 403 Objection to State's Exhibit 95

120.    [Petitioner]'s ninth point of error on direct appeal alleged that the trial court improperly overruled Applicant's Rule 403 objection to State's Exhibit 95, the buccal kit from Sam Calloway.

121.    [Petitioner] presented Sam Calloway as an alternate suspect.

122.    The DNA extracted from Sam Calloway's buccal kit ("State's Exhibit 95") was compared to the DNA profiles obtained from the victim's clothing and the crime scene.

123.    Sam Calloway was eliminated as a suspect in this case because his DNA did not match the DNA found on the victim and at the crime scene.

124.    State's Exhibit 95 was probative and helpful to the jury to explain why law enforcement eliminated [Petitioner]'s alternate suspect as a suspect.

125. State's Exhibit 95 was not particularly gruesome or unfairly prejudicial, related directly to the offense, did not confuse the issues, was relevant, did not mislead the jury, did not take too long to introduce, did not cause undue delay, and was not needlessly cumulative because it was a buccal kit of an alleged alternate suspect and evidence from the kit eliminated the alternate suspect as the perpetrator.

126. There is no evidence that the trial court abused its discretion in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 95.

127. There is no evidence that the Eighth Court of Appeals would have found any error in overruling [Petitioner]'s Rule 403 objection to State's Exhibit 95 affected [Petitioner]'s substantial rights.

128. There is no evidence that [Petitioner]'s ninth point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

129. There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his ninth point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Appellate Point of Error Seven: Rule 401 Objections to Ms. Lopez's Testimony and State's Exhibits 86 through 88

130. [Petitioner]'s seventh point of error on direct appeal alleged that the trial court improperly overruled [Petitioner]'s objections based on Rule 401 of the Texas Rules of Evidence ("Rule 401 objections") to Fort Worth Crime Lab forensic scientist Sundaye Lopez's testimony and State's Exhibits 86 through 88 regarding the pieces of brick fitting together to form a brick.

131. [Petitioner] objected to State's Exhibits 86 through 88, photographs of how the pieces of the brick fit together to form a brick.

132. [Petitioner] did not object to Ms. Lopez's testimony that she was able to put the pieces of brick found at the scene together to form a brick.

133. The medical examiner testified that the victim had a laceration to the back of her head that was consistent with being hit with a brick.

134. The pieces of the brick ("State's Exhibit 27") were believed to make up the brick that caused the laceration to the back of the victim's head.

135. Ms. Lopez's testimony was relevant to show that the pieces of brick found at the crime scene were, as the State argued, once a whole brick that caused the victim's head wound.

136. State's Exhibits 86 through 88 were relevant to show the jury that the pieces of the brick found at the crime scene were, as the State argued, once a whole brick that caused the victim's head wound.

137. There is no evidence that [Petitioner]'s seventh point of error would have been successful on appeal had the Eighth Court of Appeals addressed its merits.

138. There is no evidence that [Petitioner] was prejudiced by appellate counsel raising an issue that was not preserved for appeal.

139. There is no evidence that counsel failed to raise or properly brief any meritorious claims.

140. There is no evidence that [Petitioner] was prejudiced by appellate counsel's briefing of his seventh point of error because the outcome would not have changed even if the Eighth Court of Appeals had addressed the merits.

Unraised Issue: Biased Jurors on the Jury

141. [Petitioner] alleges that appellate counsel was ineffective because he failed to raise on direct appeal that two jurors were allowed on the jury after they were struck by the defense.

142. The trial court granted [Petitioner]'s only challenge for cause.

143. The trial court granted the agreed challenges for cause of the State and defense.

144. All peremptory strikes were honored by the trial court.

145. There is no evidence in the record that the trial court allowed two biased jurors onto the jury after [Petitioner] used his peremptory challenges to dismiss them.

146. Raising a meritless point of error would have been futile.

14 7. There is no evidence that [Petitioner] was prejudiced by appellate counsel's choice of points of error.

148.    There is no evidence that a reasonable likelihood exists that the outcome of
        the appeal would have been different but for the alleged misconduct.

SHR06 128-37, ECF No. 17-22 (citations omitted).

Based on its factual findings, and the *Strickland* standard, the state court concluded that Petitioner had failed to prove that counsel's representation was deficient or that but for counsel's alleged deficiencies there was a reasonable likelihood that the outcome of his appeal would have been different. *Id.* at 147-51.

Relying on the presumptive correctness of the state courts' factual findings, and deferring to the state court's resolution of state evidentiary matters, the state courts' application of *Strickland* was not objectively unreasonable under the doubly-deferential standard applied to such claims. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner fails to raise any meritorious claims upon which he would have prevailed on appeal. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments on appeal. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

### C. Abuse of Discretion by Trial Court

Under his third ground, Petitioner claims the trial court abused its discretion by admitting inadmissible evidence under Texas Rules of Evidence 401 and 403; by denying his motions for directed verdict; and by allowing two "self-admitted" biased jurors to serve on the jury. Pet. 7, 31-39, ECF No. 1. Petitioner's challenges to admission of evidence were forfeited on direct appeal as inadequately briefed. Op. 4, ECF No. 16-2. And, although raised again in his state habeas application, the state habeas court concluded that the claims were subject to a harmless-error analysis

and were not cognizable on state habeas review. SHR06 151-52, ECF No. 17-22. The state habeas court also concluded that Petitioner's challenges to the trial court's denial of his motions for directed verdict, raised for the first time in his state habeas application, should have been raised on appeal but were not and were "akin to an attack on the sufficiency of the evidence," which is not cognizable on state habeas review. *Id.* at 152-53.

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729, (1991); *Johnson v. Puckett,* 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. State,* 169 F.3d 295, 300 (5th Cir. 1999). Only procedural rules that are firmly established and regularly followed by state courts can prevent habeas review of a federal constitutional claim. *Hathorn v. Lovorn,* 457 U.S. 255, 262-63 (1982). Clearly, the state court relied upon independent and adequately established state procedural rules to deny the claims. *See West v. Johnson,* 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Dorsey v. Quarterman,* 494 F.3d 527, 532 (5th Cir. 2007). Thus, the claims are procedurally barred from federal habeas review.

A habeas petitioner may overcome a state procedural bar by demonstrating either cause and actual prejudice for the default or a showing that he is actually innocent of the crime for which he stands convicted. *See Sawyer v. Whitley,* 505 U.S. 333, 338 (1992)*; Ylst v. Nunnemaker,* 501 U.S. 797, 801-07 (1991); *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000). "Cause" can be established by showing that "some objective factor external" to the petitioner, something that cannot fairly be attributed to him, prevented him from properly raising the claim(s) in state court. *McClesky v. Zant,* 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1980)). On the

other hand, claims of actual innocence must be based on new evidence, and the petitioner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)).

It is obvious from Petitioner's pleadings that he faults appellate counsel for failing to raise or properly raise the claims on direct appeal. However, as discussed above, Petitioner has not shown that appellate counsel's failure to properly brief the claims amounted to a deprivation of the constitutional right to counsel. Nor does Petitioner offer any new, reliable evidence sufficient to establish his actual innocence. Instead, Petitioner's underlying theme is that he merely helped move the victim's body from the street and, save for the DNA evidence at the scene, there was no evidence suggesting that he killed the victim. But this is not new evidence showing his innocence; rather, it is argument based on the alleged lack of evidence presented at trial. "'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). Consequently, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, Petitioner's third ground is procedurally barred from the Court's review.

### D. Sufficiency of the Evidence

Under his fourth and final ground, Petitioner claims that the evidence was insufficient to support his conviction. Pet. 40-46, ECF No. 1. The state habeas court also concluded that this claim was not cognizable on state habeas review. SHR06 153-54, ECF No. 17-22. Under Texas law, it has been long held that a sufficiency-of-the-evidence claim may only be raised on direct appeal and may not be raised in a state habeas proceeding. *See West,* 92 F.3d at 1389 n.18; *Ex parte Grigsby,* 137

S.W.3d at 674. Clearly, the state court relied upon an independent and adequately established state procedural rule to deny the claim. Thus, the claim is procedurally barred from federal habeas review absent a showing of cause and prejudice or a miscarriage of justice. As noted above, Petitioner has not shown that appellate counsel's failure to adequately brief the claim amounted to a deprivation of the constitutional right to counsel nor does he offer any new, reliable evidence sufficient to establish his actual innocence. Consequently, Petitioner's fourth ground is also procedurally barred from the Court's review.

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 2nd day of August, 2018.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**